GUARANTY TRUST COMPANY OF NEW YORK, as Trustee under the First Consolidated Mortgage of RIO GRANDE WESTERN RAILWAY COMPANY, Plaintiff, v. CHASE NATIONAL BANK OF THE CITY OF NEW YORK, as Trustee under the Refunding and Improvement Mortgage of DENVER AND RIO GRANDE WESTERN RAILROAD COMPANY, et al., Defendants.

Supreme Court, Special Term, New York County, February 16, 1949.

*James L. Homire* and *Theodore Kiendl* for plaintiff.

*Arthur A. Gammell, Timothy N. Pfeiffer* and *Orville W. Wood* for Chase National Bank, as trustee under the refunding and improvement mortgage of Denver and Rio Grande Western Railroad Company, defendant.

*John B. Marsh* and *Edward E. Watts, Jr.,* for City Bank Farmers Trust Company, as trustee under the general mortgage of Denver and Rio Grande Western Railroad Company, defendant.

*F. C. Nicodemus, Jr.,* and *H. Brua Campbell* for Western Pacific Railroad Corporation, defendant.

*William A. W. Stewart* and *E. S. Stewart* for Denver and Rio Grande Western Railroad Company, defendant.

*Bernard Fischman* for Julius Klorfein, intervener, plaintiff.

*Abraham L. Pomerantz* and *William E. Haudek* for Harold S. Baird, intervener, defendant.

*Cadwalader, Wickersham & Taft* for Guy A. Thompson, as trustee of Missouri Pacific Railroad Company, defendant.

*C. Austin White* for Williah H. Hatton, as successor trustee under an agreement between James S. Alexander and others, defendant.

PECORA, J. This action presents for determination the conflicting claims of the holders of three mortgage-bond issues of the Denver and Rio Grande Western Railroad Company to certain collateral pledged under each of the mortgages. The collateral in question consists of the entire capital stock (100,000

shares) of the Utah Fuel Company, a New Jersey corporation.

The first lienor is the plaintiff, as trustee of the first consolidated mortgage, dated April 1, 1899. The next lienor in point of priority of obligation is the defendant the Chase National Bank of the City of New York, as trustee of the refunding and improvement mortgage of the primary obligor, dated February 1, 1924. The third junior lienor is the defendant City Bank Farmers Trust Company, as trustee of the general mortgage of the primary obligor, dated February 1, 1924.

Each of the defendants, Western Pacific Railroad Corporation and Guy A. Thompson, as trustee of the Missouri Pacific Railroad Company, is the owner of one half of the equity of redemption in the collateral stock of the Utah Fuel Company.

Various other parties appear in the action, but it is not deemed necessary at this time to elaborate upon their identities or interests.

In 1947 the Denver and Rio Grande Western Railroad Company, a Delaware corporation, was reorganized. The plan of reorganization excluded from all participation the stockholders of the debtor corporation and its unsecured creditors. The new securities provided for in the plan were distributed among the secured creditors in different ways. In the course of that process the plaintiff, as trustee of the first consolidated mortgage, was allotted new income bonds to the extent of 20% of its claim and new preferred and common stock to the extent of 80% of its claim. The next lienor in point of priority, the defendant Chase National Bank, as trustee of the refunding and improvement mortgage, was allotted a different assortment of new bonds to the extent of 29% of its claim and a different assortment of the new stock to the extent of the remaining 71% of its claim. The face and par value of those securities in each case aggregated 100% of the claim. The junior secured creditor, the defendant City Bank Farmers Trust Company, as trustee of the general mortgage, received only common stock of the reorganized company to the extent of 10% of its claim. This reorganization was approved by the courts (*Reconstruction Finance Corp.* v. *Denver & Rio Grande Western R. R. Co.*, 328 U. S. 495; *Insurance Group Committee* v. *Denver & Rio Grande Western R. R. Co.*, 329 U. S. 607).

The reorganization occurred in the Federal bankruptcy court, and, as is not disputed in this case, concerned only the property of the debtor railroad. That was all that the courts passing on the reorganization had jurisdiction to deal with (Bankruptcy

Act, § 77, subd. [a]; U. S. Code, tit. 11, § 205; *Ecker* v. *Western Pacific R. R. Corp.,* 318 U. S. 448, 506; *Reconstruction Finance Corp.* v. *Denver & Rio Grande Western R. R. Co.,* 328 U. S. 495, 531). Accordingly, the 100,000 shares of the capital stock of the Utah Fuel Company, which were not the property of the debtor railroad, were not really involved in that litigation, and their disposition was not even attempted in the reorganization litigation. The United States Supreme Court distinctly recognized that, since it expressly declared that the rights of the parties in that stock were to be settled by subsequent litigation in a different tribunal. The present action is brought to that end. The Supreme Court having left open the issue of the rights of the interested parties in the Utah Fuel Company stock, it is clear that it did not at the same time adjudicate that issue.

The Utah Fuel Company stock is not the property of the Denver and Rio Grande Western Railroad either as that corporation was before reorganization or as it is now. That stock belongs to others, subject however to the pledge now to be mentioned. That stock, it is conceded, is to be regarded in this case as accommodation collateral under pledge as further security, to the extent of $6,000,000 only, for the payment in full of the first consolidated mortgage bonds of which the plaintiff Guaranty Trust Company is the trustee. In the first reorganization decision, the Supreme Court defined the relative rights of the several lienors now before the court in this Utah Fuel stock as follows (*supra,* 328 U. S. 495, 530): "The junior lienors [referring to the trustees of the refunding and improvement mortgage and the general mortgage] have an absolute right under the terms of the 1901 pledge and the 1924 agreement to all the proceeds of the [Utah Fuel Company] stock over $6,000,000 and a right also to any part of the proceeds not needed to make the First Consolidated bonds whole."

I accept that view as the sound view of the situation at bar. In my opinion, the first consolidated bonds are entitled to be made whole out of the accommodation collateral, provided that not more than $6,000,000 of the proceeds of that collateral is used for that purpose. If, however, that collateral should bring more than $6,000,000, or the first consolidated bonds should be paid in full without need for some or all of the proceeds of the pledged stock, then such excess should go first to the payment of any deficit on the refunding and improvement bonds in full, and then, if anything be left over, to the payment of the deficiency on the general mortgage bonds.

The plaintiff Guaranty Trust Company, asserting that the securities which it received in the Federal reorganization proceeding are in fact worth considerably less than the amount of its claim, now seeks, in this action, to have the pledged Utah Fuel Company stock applied so as to make up the deficiency. The defendants representing the general mortgage bondholders, resisting that claim, assert that the plaintiff's claim must be regarded as paid in full, and that that is indeed the legal effect of the adjudication made in the Federal bankruptcy reorganization case. That contention presents the principal question for decision herein.

The argument to sustain the plea of payment and *res judicata* runs substantially thus: In Federal bankruptcy reorganizations, it is declared, a senior lienor must be paid in full before a junior lienor can be allowed any participation whatever, whether what is allotted to the respective lienors be in cash or in securities. Hence, it is urged, since the junior lienor, the trustee of the general mortgage bonds, was in this case permitted to participate, it necessarily follows that the bankruptcy reorganization case adjudicated that the prior lienors, including the plaintiff as trustee of the first consolidated bonds, were paid in full. Having thus reached the conclusion that the plaintiff's bonds were all paid in full in the reorganization proceeding, the defendants interested in the general mortgage bonds declare that, since concededly the plaintiff is not entitled to have more than payment in full, the Utah Fuel stock, pledged to secure it full payment, is now not available to any extent for the benefit of the first consolidated bonds.

The plaintiff trustee, on the other hand, insists that the value of what it actually received in the reorganization proceeding is much less than one hundred cents on the dollar; that therefore its claim actually is and remains quite substantially unpaid; that the pledged security was intended to be applied to make good precisely such a deficiency; and that, whatever may be the effect of the so-called full priority rule in bankruptcy reorganization (cf. *Case v. Los Angeles Lumber Products Co.,* 308 U. S. 106, 117; *Group of Institutional Investors v. Chicago, Milwaukee, St. Paul & Pacific R. R. Co.,* 318 U. S. 523, 565–566; and the second *Denver* case, 329 U. S. 607, 617), it cannot, in another proceeding like this, set at naught the realities of the situation and convert that into full payment which in truth is substantially less.

In my opinion, the plaintiff's view is correct and just. The pledge of the Utah Fuel stock was made under a contract which

guaranteed full payment of the first consolidated bonds (up to $6,000,000) *actually* and not merely fictionally or constructively (*Matter of Western Pacific R. R. Co.,* U. S. Dist. Ct., N. D. Cal., June 21, 1944, St. Sure, J., affd. *sub nom. Railroad Credit Corp.* v. *Ecker,* 152 F. 2d 418). When that pledge, therefore, comes to be enforced, the fact which is determinative is whether payment has actually been made in full; and only if that has occurred, can the pledge agreement be regarded as fulfilled (*Matter of Nine North Church Street, Inc.,* 82 F. 2d 186). Hence the next question before us in this case is, whether or not the plaintiff has heretofore received in money or money's worth the full equivalent of its claim. In that respect, I believe, there has been no binding adjudication of payment made against this plaintiff by the reorganization proceeding (*Union Trust Co.* v. *Willsea,* 275 N. Y. 164; Bankruptcy Act, § 16; U. S. Code, tit. 11, § 34).

That view makes it necessary to consider the actual value of the new securities of the Denver and Rio Grande Western Railroad Company which were awarded to the plaintiff in the reorganization. The record does disclose some market quotations therefor. Those are chiefly " if, as and when issued " market quotations; and they do not seem to me to be as satisfactory a demonstration of the value of the large amount of securities involved herein as probably can be made in this case. Upon the trial, the court reserved the right to have further proof supplied, if that course seemed necessary in order to arrive at a final determination. That now appears to me to be the situation in respect of the issue of the value of the new securities allotted to the senior lienors in the reorganization proceeding. Whether the market prices in evidence sufficiently reflect a properly informed and adequate understanding of the reorganized railroad's prospects and constitute a sufficiently large, free and open market to establish the value of the securities of the reorganized company, should, I think, be more clearly established. Hence, I believe that there should be further proof and more consideration of that issue, and that a reference to hear and report should be ordered in that respect. In *Western Pacific R. R. Corp.* v. *Railroad Credit Corp.* (*Baltimore Daily Record,* Dec. 12, 1946, Circuit Ct. of Baltimore, Md., Niles, J.), the court, in dealing with a similar question, declared that: " Although there was a market for the New Securities [received in the Western Pacific Railroad reorganization], and quotations on the New York Stock Exchange, it is not certain that these quotations represent the prices at which large blocks of these

securities could have been sold * * *. Just what would have been realized [if large blocks had been offered on the exchange] is problematical.''

It is, furthermore, my opinion that the value of the Utah Fuel Company stock should be ascertained as speedily as possible, as well as the terms and conditions under which its sale should be held.

Such a sale should not be had without proper safeguarding provisions. Should there be an upset price fixed by the court? Should the sale be had of the stock as a whole, or in parcels, or in alternative combination of parcels, or by some other method? When and where should the sale be held? Nothing in the record sufficiently enlightens me on these matters. They too require further proof and consideration, and the referee to be appointed should report on those matters as well. Upon the coming in of the referee's report thereon the court would be in a better position to determine whether the stock should be sold in advance of the final determination of this case. The proceeds of such a sale, if made, would be available for prompt distribution in accordance with whatever ultimate adjudication may be made of all the issues herein involved.

There are other questions in the case which do not require ultimate or definitive decision at this time. Thus, as has been stated above, it is indisputable that the pledge of the Utah Fuel stock is limited to $6,000,000. Precisely who would be entitled to any excess realized on the sale, and in what amounts, are questions which can well be postponed until after the sale, and certainly at least until after the referee's report on the value of that stock has been made. If what is realized on the sale should prove to be insufficient even to cover the amount needed to pay the publicly held first consolidated bonds in full, this question would be merely academic.

There is also the question whether bonds which are now in the hands of the reorganized company, but which were heretofore pledged with creditors who have been paid off, are entitled to share *pari passu* with the publicly held bonds or are to be subordinated thereto. This issue concerns both first consolidated bonds and refunding and improvement bonds. Some of those bonds were pledged for a loan made by the defendant the Chase Bank and others for a loan made by the Reconstruction Finance Corporation. The loans in question have been paid and the pledged bonds are now held by the reorganized railroad corporation. The latter insists that they should be treated precisely as any of the publicly held bonds.

I am unable to concur in that view. Regarding the facts fairly and realistically, it seems to me that, in this relation, what has happened is that the debtor has paid its own debt. Obligors who do merely that are not entitled to take the interests of others by any sound application of the equitable doctrine of subrogation. Hence I do not believe that the defendant Denver and Rio Grande Western Railroad Company may stand upon any of the rights which the Chase Bank or the Reconstruction Finance Corporation may have had (*Pathe Exch., Inc.,* v. *Bray Pictures Corp.,* 231 App. Div. 465, 469). The debtor company, in issuing its bonds, promised to pay them, and it would, I think, be quite unjust to allow it in effect to pay itself moneys before it paid in full all that it owed its bond creditors. (*Matter of Lawyers Mtge. Co.* [*545 West End Ave.*], 157 Misc. 813, affd. 248 App. Div. 715, affd. 272 N. Y. 554; *Bell* v. *Greenwood,* 229 App. Div. 550.)

The parties waived the making of formal findings of fact and conclusions of law. Hence no formal decision is requisite in this case. An interlocutory judgment in conformity with the foregoing should be entered. No costs are awarded. Notice of settlement of the judgment should be duly given and provision should be made in such judgment whereby this court will retain full jurisdiction to make such further orders and directions as may be deemed just and equitable.