[Civ. No. 25324. First Dist., Div. Two. Sept. 23, 1969.]

JOHN C. LEGGETT, Plaintiff and Appellant, v. Dɪ GIOR-
GIO CORPORATION et al., Defendants and Respon-
dents.

Nason, Lydon & Gaines and George A. Lydon for Plaintiff and Appellant.

Sedgwick, Detert, Moran & Arnold, Bronson, Bronson & McKinnon, William Judge and Miles A. Cobb for Defendants and Respondents.

SHOEMAKER, P. J.—This is an appeal by plaintiff John Leggett from a summary judgment in favor of defendants The Di Giorgio Corporation, Di Giorgio Fruit Corporation and J. Stewart Harrison.

Plaintiff Leggett brought this action for false arrest and imprisonment and damages caused him thereby.

All defendants answered and admitted that plaintiff had been arrested by defendant Harrison, who was acting in the scope of his authority as an attorney retained by the two corporate defendants. Defendants further admitted that plaintiff was involuntarily imprisoned following said arrest and that defendants thereafter executed a complaint charging plaintiff with a violation of Penal Code, section 166. However, defendants asserted that their conduct was legally justified by the fact that plaintiff, in Harrison's presence, had wilfully committed criminal contempt, in violation of Penal Code, section 166, by engaging in picketing in deliberate violation of a

temporary restraining order previously issued by the superior court and still in full force and effect at the time of plaintiff's arrest.

Defendants thereafter moved for summary judgment and filed in support of said motion the declaration of defendant Harrison. According to said declaration, Harrison, as attorney representing the two corporate defendants, had on December 14, 1965, obtained from a superior court judge a temporary restraining order which was to remain in effect until December 28, 1965; that the order in question provided that the Farm Workers Association (FWA) and Agricultural Workers Organizing Committee (AWOC), their officers, agents, representatives, servants, employees, deputies, members and pickets, and persons acting in concert with them, were restrained from picketing or patrolling at or about Pier 37 in San Francisco, or in any of the streets leading thereto, for the purpose of interfering with the delivery of grapes or other agricultural produce of The Di Giorgio Corporation to said pier or the shipment of such produce from said terminal. Harrison further averred that prior to 7 a.m. on December 17, 1965, he arrived at Pier 37 and that both pickets and San Francisco police officers were present; that Harrison and another attorney served copies of the temporary restraining order on the pickets and explained the contents of said order to them; that most of the pickets then departed but that several refused and that Harrison and his fellow attorney, with the assistance of the San Francisco police, then made citizens' arrests upon them. Harrison averred that the pickets were carrying signs reading "Support Delano Strikers" and that the loading of grapes of The Di Giorgio Corporation was not carried out during the picketing. The declaration further stated that plaintiff Leggett was carrying such a picket sign and was walking back and forth in front of the entrance of Pier 37; that Harrison served plaintiff with a copy of the temporary restraining order and explained to him that the picketing of the dock had been enjoined by a superior court order; that plaintiff appeared to read the order himself while continuing to hold his picket sign; that Harrison described certain paragraphs of the order to plaintiff and asked him to peacefully move on but that plaintiff replied that he did not think that he would do so. After a San Francisco police officer had likewise told plaintiff of the court order and asked him to move on, plaintiff still refused to do so and stated that he did not care what a court said, that he had a right to remain and

was going to stay and continue picketing. Harrison averred that he then asked plaintiff his name and advised him that he found it his duty to arrest him. Harrison then touched plaintiff's arm and advised a police officer that he was making a citizen's arrest of plaintiff. Although the officer and Harrison thereafter offered plaintiff a further opportunity to reconsider his decision, plaintiff again stated that no one could tell him where he could or could not be and that he intended to stay and picket. Plaintiff was then taken into custody by the police officer.

Plaintiff Leggett filed a counterdeclaration to the effect that he had arrived at Pier 37 on the morning of December 17, 1965, for the sole purpose of expressing his personal support for the FWA and the AWOC. He denied that he had previously decided what he would say or do when he arrived at the pier and likewise denied that he had previously agreed with any other person or organization to do or say anything. According to plaintiff, he was acting solely as an individual citizen, was not in concert with anyone and was not at any time an officer, agent, representative, employee or member of the FWA or the AWOC. Plaintiff averred that after his arrival at the pier on the morning of his arrest, he was given a picket sign by one of several persons who were walking slowly, in an orderly and peaceful manner, to and fro along the area near the entrance to the pier. He denied that any of the pickets were blocking the entrance, but admitted that they carried signs which announced that "struck" grapes were being loaded for shipment and urged support for the strikers. According to plaintiff, he had taken his sign and walked approximately 10 paces when defendant Harrison approached him and asked him to identify himself. When plaintiff had done so, Harrison advised him that there was a restraining order which prohibited picketing at the pier and that he (plaintiff) was covered by the terms of the order and could not engage in picketing. Harrison asked plaintiff if he wished to read the order and also inquired whether plaintiff was aware that he was in violation of said order. According to plaintiff, he told Harrison that he was unaware of the existence of any such order and stated that he would like to know what it said. Harrison then read plaintiff excerpts from a document and asked him if he understood what had been read to him. Plaintiff replied that he did. Harrison then asked plaintiff if he planned to continue picketing, and plaintiff replied that he did but that he would like to read the docu-

ment so that he could ascertain what he might be arrested for. At this point Harrison announced that he would have to arrest plaintiff, and he turned to a police officer and directed him to place plaintiff under arrest. Harrison himself then placed his hand on plaintiff's shoulder or arm and stated to the officer that he (Harrison) was arresting plaintiff. The officer then placed his hand on plaintiff's arm and asked plaintiff to accompany him to a police van which was parked nearby. According to plaintiff, the officer made it clear to him that it was Harrison, and not the San Francisco Police Department, who was arresting plaintiff.

Plaintiff further averred in his declaration that he had at no time picketed or attempted to picket after Harrison had advised him of the existence of the restraining order. According to plaintiff, he laid his picket sign face down on the ground with its shaft leaning against his legs when Harrison first approached him. Plaintiff admitted that after Harrison had read him excerpts from the court order, he did announce his "intention" to picket and his belief that peaceful picketing was lawful in California and could not be prohibited by court order. Plaintiff averred that he was still attempting to discuss the merits of his position when he was arrested, denied that he had at any time walked back and forth in front of the entrance to the pier while holding a sign, and also denied that after he had been approached by Harrison he had continued to hold the picket sign or that he had refused to leave. Plaintiff further averred that although he had specifically asked to be allowed to do so, he was never permitted to read the restraining order in its entirety until after he was arrested.

Following a hearing on the motion for summary judgment, the court made an order finding that the Harrison declaration showed that the action had no merit and that the Leggett declaration presented no triable issue of fact. The court thereafter ordered that the complaint be dismissed and judgment was entered in favor of defendants.

■ It is settled that in ruling upon a motion for summary judgment, the issue to be determined by the trial court is whether or not the party opposing the motion has presented any facts which give rise to a triable issue and not to pass upon the issue itself, that is, the true facts in the case. (*Eagle Oil & Refining Co.* v. *Prentice* (1942) 19 Cal.2d 553, 555-556 [122 P.2d 264] ; *Coyne* v. *Krempels* (1950) 36 Cal.2d 257, 260-261 [223 P.2d 244] ; *Desny* v. *Wilder* (1956) 46 Cal.2d 715,

725 [299 P.2d 257].) The affidavits or declarations of the moving party must be strictly construed and those of his opponent liberally construed, and it is the better rule that the facts alleged in the affidavits of the party against whom the motion is made must be accepted as true, even though not composed wholly of strictly evidentiary facts. (*Eagle Oil & Refining Co.* v. *Prentice, supra,* at p. 556; *Desny* v. *Wilder, supra,* at pp. 725-726.) A summary judgment may properly be granted only if the affidavits in support of the motion state facts which would be sufficient to sustain a judgment in favor of the moving party and his opponent's affidavits are insufficient to present any triable issue of fact. (*Coyne* v. *Krempels, supra,* at p. 261.)

 Plaintiff's complaint stated a cause of action for false arrest and imprisonment. His right to recover depends solely upon a showing that his arrest and imprisonment were in fact unlawful, and the provocation, motive and good faith of the defendants constitute no material element in the case, except insofar as they affect the measure of the punitive damages prayed for. (*Collyer* v. *S. H. Kress & Co.* (1936) 5 Cal.2d 175, 180 [54 P.2d 20]; *Floro* v. *Lawton* (1960) 187 Cal.App.2d 657, 667-668 [10 Cal.Rptr. 98]; *Stallings* v. *Foster* (1953) 119 Cal.App.2d 614, 618-619 [259 P.2d 1006]; *Collins* v. *Owens* (1947) 77 Cal.App.2d 713 [176 P.2d 372].)

 Turning to the averments of the declaration and counterdeclaration filed by the parties, it is conceded that when Harrison undertook to arrest plaintiff, he was acting pursuant to subdivision 1 of Penal Code, section 837, which authorizes an arrest by a private person "[f]or a public offense committed or attempted in his presence," and that the offense of which plaintiff was purportedly guilty was criminal contempt, a misdemeanor, which, under subdivision 4 of Penal Code, section 166, may consist of "[w]illful disobedience of any process or order lawfully issued by any court."

The problem presented by this case is whether, construing the averments of plaintiff's declaration in the most favorable possible light, it can be said that plaintiff did in fact commit this offense in Harrison's presence. In our opinion, plaintiff is not guilty of violating the order issued by the court.

Plaintiff's declaration clearly shows that although he did walk approximately 10 paces while carrying a picket sign urging support for strikers, he did so at a time when he was

unaware of the existence of any restraining order prohibiting such conduct. Under this set of facts, we cannot say that he was in "willful disobedience" of such order at that time. Plaintiff's declaration further avers that he ceased picketing immediately after Harrison approached him and that he put down his picket sign and did nothing thereafter but argue the legality of the restraining order in Harrison's possession, ask for the opportunity to read the order in its entirety, and announce his intention to continue picketing. Plaintiff denied that he ever refused to leave the scene and averred that Harrison arrested him before he had ever made any attempt to resume his picketing activity.

In view of the above averments of plaintiff's declaration, a triable issue of fact was presented as to the legality of plaintiff's arrest and imprisonment and plaintiff's declaration, if in fact true, would support a finding that he did not commit or attempt to commit criminal contempt in Harrison's presence but merely indicated that he intended to continue picketing and believed that such was his legal right. Although defendants have cited two cases which purportedly contain language in support of a contrary view, neither case is of any benefit to defendants. *In re Burns* (1958) 161 Cal.App.2d 137 [326 P.2d 617], involved a situation where the petitioner was held to be in contempt of court for her failure to comply with a court order that she appear in court at a specific date and hour. Although the appellate decision does contain certain language, relied upon by defendants, to the effect that criminal contempt may encompass "an indifferent disregard of the duty" to obey a court order promptly (p. 142), defendants overlook the fact that the petitioner *had* violated the court's order with knowledge of same and that, in any event, the appellate court annulled the contempt adjudication because there was no evidence of "willful disobedience" of the court order and the petitioner was given no opportunity to present evidence in her defense. In *People v. Werner* (1940) 16 Cal.2d 216 [105 P.2d 927], the second case upon which defendants rely, the court merely defined an attempt to commit a crime as being compounded of two elements: intent and a direct ineffectual act done toward its commission (p. 221). This statement is contrary to defendants' position. It may also be noted that the appellate court followed it with a quote from 14 American Jurisprudence 786, section 25, to the effect that the law does not concern itself with mere guilty intention, unconnected with any overt act or outward manifestation (p.

222). Finally, the court in *Werner* held that the evidence was insufficient to support defendant's conviction of grand theft and ordered a new trial.

We conclude that the declaration and counterdeclaration filed in connection with the motion for summary judgment did not eliminate a triable issue of fact relative to the legality of plaintiff's arrest and imprisonment, and that the summary judgment in defendants' favor must be reversed, with the result that we need not discuss plaintiff's other contentions on appeal.

The summary judgment in defendants' favor is reversed.

Agee, J., and Taylor, J., concurred.