[Civ. No. 35661. Second Dist., Div. Three. Dec. 23, 1970.]

DONALD G. ZELLNER, Plaintiff and Appellant, v.
BYRON H. LASKY, Defendant and Respondent.

**COUNSEL**

Kalmbach, DeMarco, Knapp & Chillingworth, Frank DeMarco, Jr., and Richard C. Greenberg for Plaintiff and Appellant.

Richards, Watson & Hemmerling and Ronald M. Greenberg for Defendant and Respondent.

## OPINION

**SCHWEITZER, Acting P. J.**—This case presents the question as to whether a guarantor is released from his obligation on a written guaranty by the creditor's participation in the Chapter XI bankruptcy proceeding (11 U.S.C. § 701 et seq.) of the principal obligor which resulted in the exoneration of the principal obligor from further liability by the issuance of stock pursuant to the principal obligor's plan of arrangement approved by the bankruptcy court.

The nominal plaintiff, assignee of the creditor, Mission Viejo Company (Mission), appeals from a summary judgment entered in favor of defendant Lasky, the guarantor. From the declarations filed by the parties the trial court concluded that Mission's acceptance of the stock in the Chapter XI proceeding constituted full payment of the debt, and that the guarantor was thereby exonerated. (Civ. Code, § 2839.)

### Summary Judgment

■ "It is settled that in ruling upon a motion for summary judgment, the issue to be determined by the trial court is whether or not the party opposing the motion has presented any facts that give rise to a triable issue and not to pass upon the issue itself, that is, the true facts in the case. [Citations.]

■ The affidavits or declarations of the moving party must be strictly construed and those of his opponent liberally construed, and it is the better rule that the facts alleged in the affidavits of the party against whom the motion is made must be accepted as true, even though not composed wholly of strictly evidentiary facts. [Citations.] **(3)** A summary judgment may properly be granted only if the affidavits in support of the motion state facts which would be sufficient to sustain a judgment in favor of the moving party and his opponent's affidavits are insufficient to present any triable issue of fact. [Citation.]" (*Leggett* v. *DiGiorgio Corp.*, 276 Cal.App.2d 306, 310-311 [80 Cal.Rptr. 697].)

### Facts

With the foregoing principles in mind we turn to the facts here presented. In 1966 Mission entered into a sale and option agreement with Signet Properties, Inc. (Signet). Concurrently therewith defendants Lee and Lasky entered into an agreement which provided that they would indemnify and hold Mission harmless from any liability, damage, cost, expense or loss occasioned by a default by Signet under its agreement.

As a result of economic difficulties, Signet defaulted, and Chapter XI bankruptcy petitions were filed by Signet on May 22, 1967, and by the co-

guarantor Lee on June 14, 1967. As a result of the default, Mission incurred a loss of $227,991.53 plus interest and incidental costs and expenses.

The two bankruptcy proceedings were consolidated, a consolidated plan of arrangement was filed on July 20, 1967, by the debtors, and was confirmed on August 18, 1967, by order of the referee in bankruptcy. In brief it transferred possession of the debtors' assets to the debtors, allowed them to manage their affairs, provided for the issuance of $100 par value preferred stock in Harlan Lee and Associates, Inc. to each creditor for each $100 of indebtedness in full and complete satisfaction of the claim of each creditor against the debtors, "discharged the debtors from all their debts, claims and liabilities," and enjoined creditors from prosecuting claims against the debtors.

On September 11, 1967, Mission filed with the bankruptcy court its claim for $227,991.53, plus interest and incidental costs and expenses. Objections thereto were filed on March 1, 1968, by the debtors on the ground that the claim was secured and that Mission was not entitled to participate in the proceeds unless the security be waived. On April 2, 1968, Mission filed points and authorities in support of its claim, pointing out that in its proof of claim it had expressly waived and released "any and all security under said liability and debt," and asked for "the establishment of its rights as an unsecured creditor in the amount of the claim."[1] On May 1, 1968, the referee in bankruptcy overruled the objections and approved Mission's claim.

In the meantime on April 16, 1968, the nominal plaintiff herein, assignee of Mission, filed the instant action against Lasky, Lee and Signet for money due under Mission's sale and option agreement with Signet and the guaranty of Lee and Lasky. The action was later voluntarily dismissed by plaintiff as against Lee and Signet. On May 28, 1968, Lasky filed an answer denying all liability.

Pursuant to the August 18, 1967, order confirming the consolidated plan of arrangement, on June 28, 1968, Harlan Lee and Associates, Inc. caused a certificate for 2,280 shares of stock to be issued in the name of Mission. As of July 1, 1968, the fair market value of the stock was not in excess of $25 per share. On July 18, 1968, Mission sent Lasky a "Notice of Election to Subrogate," advising Lasky that in connection with the bankruptcy proceedings 2,280 shares of stock in Harlan Lee and Associates, Inc., registered in the name of Mission, will be delivered by the debtors into escrow with the California Commissioner of Corporations to be held for the benefit of Mis-

---

[1]Normally, the waiver of security by a creditor that alters or impairs the rights or remedies of the creditor against his principal will release the guarantor. (Civ. Code, § 2819.) Here neither party asserts that the creditor waived anything of value or anything that altered or impaired any obligation.

sion, that Mission has not and does not "elect to receive any of said shares in satisfaction of any obligations or monies owed to plaintiff or Mission . . . [by defendants] and at no time has either of them intended to receive such shares in discharge of all or a part of your obligation to indemnify" Mission; that Mission intends to look solely to Lasky under the indemnity agreement for payment; that demand is made for the full cash payment thereof; and that upon payment Mission will transfer to Lasky all of its right, title and interest in the stock.

On August 1, 1968, Lasky notified Mission that he was rejecting Mission's election to subrogate. Plaintiff thereupon filed a supplement to the complaint, setting forth allegations of Mission's notice of election to subrogate and of Lasky's rejection thereof, and asking that defendant be subrogated to Mission's rights in the stock.

The certificates for stock in Harlan Lee and Associates, Inc., registered in the names of the various creditors, including Mission, were transmitted by the debtors to the Commissioner of Corporations on July 22, 1968. Since this completed the execution of the consolidated plan of arrangement, on July 25, 1968, the referee in bankruptcy signed a final decree closing the estates of the debtors.

## Contentions

Plaintiff contends that triable issues of fact are presented: (1) whether Mission accepted the stock; (2) whether Mission's tender of subrogation was timely; and (3) the valuation of the securities issued to Mission.

With respect to these contentions Lasky argues that as of September 11, 1967, Mission, as a scheduled creditor, had received notice of the confirmation of the plan of arrangement and was in a position to know exactly what it would receive if its claim was allowed; that the choice of filing for the stock or demanding cash-in-lieu-of-securities from Lasky and offering to subrogate Lasky to its rights to the stock was for Mission to make; that no one forced Mission to file its claim; that if it had not filed a claim, Lasky would not have been prejudiced because the guarantor, if unable to persuade Mission to file proof of its claim, could have filed such proof of claim himself or pay Mission and be subrogated to its rights (1 Collier on Bankruptcy (14th ed.) par. 16.05, p. 1527); that Mission's attempt to make a cash-in-lieu-of-securities choice after issuance of the stock by tendering it to Lasky in return for full cash payment was untimely as a matter of law (*Durgin* v. *Kaplan,* 68 Cal.2d 81 [65 Cal.Rptr. 158, 436 P.2d 70]); and that therefore there are no triable issues of fact.

## Liability of Guarantor for a Chapter XI Debtor

*Effect on Guaranty of Discharge of Debtor.* The Bankruptcy Act provides: "The liability of a person who is a co-debtor with, or guarantor or in any manner a surety for, a bankrupt shall not be altered by the discharge of such bankrupt." (11 U.S.C. § 34.) (See 1 Collier on Bankruptcy (14th ed.) par. 16.02, pp. 1523-1526.) This section is applicable to Chapter XI bankruptcy proceedings. (*United States* v. *George A. Fuller Co.* (D.Mont. 1965) 250 F.Supp. 649; *United States* v. *Hass* (E.D.N.Y. 1957) 152 F.Supp. 715.) The substance of this section is set forth in section 2825 of the Civil Code: "A surety is not exonerated by the discharge of his principal by operation of law, without the intervention or omission of the creditor." Thus in *Bloom* v. *Bender,* 48 Cal.2d 793, 800-804 [313 P.2d 568], the surety was held liable to the creditor for the amount of the debtor's obligation, less the pro rata dividend received by the creditor, following a general assignment for the benefit of creditors which constituted a release of the principal debtor.

*Effect on Guaranty by Participation of Creditor in Debtor Proceedings.* It is obvious, of course, that actual payment of an obligation exonerates the guarantor. (Civ. Code, § 2839), and that a creditor's acceptance of anything in partial satisfaction of an obligation reduces the guarantor's obligation in the same manner. (Civ. Code, § 2822.)

It has been stated that the creditor is not prejudiced by filing his proof of claim or by accepting a dividend in a Chapter XI proceeding. A creditor who obtained a cash dividend in partial satisfaction of his claim may recover the balance from the guarantor. If the dividend is paid in securities, the creditor has a choice; he may retain the securities and sue the guarantor for the difference, or, to avoid the difficulties of valuation, he may recover the full amount of his claim from the guarantor, and subrogate the guarantor to the rights of the creditor in the securities. (1 Collier on Bankruptcy (14th ed.) par. 16.05, pp. 1528-1531.) (See *United States* v. *George A. Fuller Co., supra* (D.Mont. 1965) 250 F.Supp. 649, 656-658 (a Chapter XI proceeding); *United States* v. *Hass, supra* (E.D.N.Y. 1957) 152 F.Supp. 715, 716 (a Chapter XI proceeding); *Guaranty Trust Co.* v. *Chase Nat. Bank* (1949) 194 Misc. 628 [86 N.Y.S.2d 505, 509-510], affd. 277 App.Div. 767 [97 N.Y.S.2d 542] (a 77 B proceeding); *Union Trust Co.* v. *Willsea* (1937) 275 N.Y. 164 [9 N.E.2d 820, 112 A.L.R. 1175, 1176-1177] (a 77 B proceeding); *Bloom* v. *Bender, supra,* 48 Cal.2d 793, 800-804 (a composition of creditors).) But the creditor cannot receive securities, hold them for speculative purposes, and later seek to subrogate the guarantor to his rights therein. Under such circumstances, the creditor is deemed to have accepted the stock; "once the choice is made, the right to

demand cash and let the guarantor be subrogated to the securities is lost."
(1 Collier, *id.*, 1969 Supp., par. 16.05, p. 1530, fn. 15, citing *Durgin* v.
*Kaplan, supra,* 68 Cal.2d 81.)

The question presented herein is whether Mission made a choice by its
participation in the arrangement proceeding which resulted in the issuance
of stock in Mission's name and the transmittal of the stock certificate into
escrow for Mission's account. The question requires an analysis of *Durgin*
v. *Kaplan, supra,* 68 Cal.2d 81.

In *Durgin* the debtor filed a Chapter XI bankruptcy petition. Thereafter
the bankruptcy court approved the plan of arrangement submitted by the
debtor which provided for a stock split and issuance of stock to each
creditor for each dollar of indebtedness in full satisfaction of the claims
of the creditors. Plaintiff filed its claim and thereafter received stock equal
to the full amount thereof. As stated by the Supreme Court (68 Cal.2d
at p. 86): "In its complaint, [the creditor] alleged the principal debt and
the guaranty. The guarantor pleaded as an affirmative defense the creditor's
receipt in a Chapter XI bankruptcy proceeding of the principal's stock
equal in value to at least the amount of the debt. Plaintiff sought to prove
in its case in chief that the stock was valueless. The court gave its requested
instruction that judgment for plaintiff should be in the amount of the debt
less the fair market value of the stock. In returning a verdict for defendant,
the jury necessarily found that the value of the stock equalled or exceeded
that of the debt and that the debt was thereby extinguished."

It is significant to note that in *Durgin* the creditor did not seek before or
during trial its right of subrogation, but urged it for the first time on appeal.
The Supreme Court stated: "We consider plaintiff's failure to raise its
subrogation theory of recovery at trial as a substantive, not merely pro-
cedural, matter evidencing its acceptance of the stock. Consequently, we
need not rest our holding on defendant's contention that plaintiff, having
elected the value theory of recovery at trial and suffered a judgment against
it, may not change to a subrogation theory of recovery on appeal. Rather,
plaintiff may not now prevail on its subrogation theory because its accept-
ance of the stock, evidenced by its retention of and benefit from the stock,
its failure to exercise its option to demand cash, and its affirmative election
of the value theory of recovery at trial, brings into operation Civil Code
section 2822, and its corollary, section 2839." (68 Cal.2d at pp. 88-89.)

In further explanation of its decision the court added on page 91: "We
believe, therefore, that plaintiff accepted the arrangement-proceeding stock
within the meaning of section 2822 not only expressly, by choosing the
value theory of recovery *at trial*, but impliedly as well, by remaining silent

while accepting the benefits of the stock *after the Chapter XI proceeding.*" (Italics in original.) (68 Cal.2d at pp. 91-92.)

Defendant argues that two paragraphs of *Durgin* conclusively support his contentions that as a matter of law Mission must be deemed to have accepted the securities by not having attempted to exercise its option at the time of the confirmation of the plan of arrangement, that its offer of subrogation was therefore not timely, and that as a result no triable issue of fact is presented.

First, on page 83 the Supreme Court stated: "In order to protect guarantors against being cast involuntarily into the role of insurers against creditors' losses from speculative holding of such stock for an indefinite period, we hold that Civil Code section 2822 [fn. omitted] requires, in case of bankruptcy proceedings, as in the instant situation, that creditors clearly exercise such cash-in-lieu-of-securities choices at the time of confirmation of the plan of arrangement or else be charged with acceptance of the stock received in bankruptcy."

Second, on page 92 the Supreme Court stated: "If the creditor is to avoid the operation of section 2822 and retain its option to demand cash instead of accepting securities, the creditor must act promptly and clearly to exercise its option at a time before the benefits of appreciation will accrue to it. Normally this time will be the date of the final decree of the bankruptcy court confirming the plan of arrangement."

Defendant in effect contends that *Durgin* sets forth an arbitrary and inflexible rule that when a dividend is to be paid in securities, an election must be made by the creditor at the time of confirmation of the plan of arrangement and that if the creditor fails to do so, the creditor is deemed to have accepted the benefits of the plan in satisfaction of the obligation, thereby exonerating the guarantor.

We do not agree with this contention. In the first quoted paragraph the Supreme Court clearly indicated that it was referring to a factual situation involving the "speculative holding of . . . stock [by a creditor] for an indefinite period." In the second quoted paragraph the Supreme Court prefaced its statement by the use of the word "normally." "Normally" is synonymous with "usually"; each word suggests exceptions.

Furthermore, in its penultimate paragraph the Supreme Court stated: "We cannot exhaustively define all of the circumstances which constitute acceptance, nor can we delimit exclusive means of exercise of the option. Appropriate procedures may include, if the securities are transferable, their tender to the guarantor, or, if the securities are not transferable except by operation of law, written notice to the guarantor demanding full cash

payment and offering subrogation of the rights in the securities, prayer for such relief in pleadings, and indication of the election of such a theory of recovery in connection with a motion for summary judgment. Needless to say, such action must be taken before acceptance of the securities by the creditor." (68 Cal.2d at p. 92.)

*Durgin* dealt with an unusual factual situation: the creditor received stock, held it for a lengthy period of time, speculating on its appreciation in value, then sought to recover the difference in its value, and after a jury had determined that the fair market value of the stock at the time of receipt equalled the principal debt, the creditor sought to subrogate the guarantor to its rights in the securities.

At most *Durgin* holds that under such facts the creditor must be deemed to have accepted the stock in lieu of cash, that having acted under such election, its right to demand cash and subrogate the guarantor was lost, and that it is a question of fact in each case as to whether the creditor has made a binding election. Statements made therein that indicate that the choice must be made at the time of the order confirming the plan of arrangement appear to be dicta.

We return to the facts of the instant case to compare them with *Durgin:*

| | |
|---|---|
| July 20, 1967 | Consolidated plan of arrangement filed. |
| Aug. 18, 1967 | Consolidated plan of arrangement confirmed by referee in bankruptcy. |
| Sept. 11, 1967 | Claim of Mission filed. |
| Mar. 1, 1968 | Objections to claim filed by debtors. |
| Apr. 16, 1968 | Complaint on guaranty filed in Superior Court. |
| May 1, 1968 | Objections to claim overruled and approved by referee in bankruptcy. |
| May 28, 1968 | Answer of Lasky filed. |
| June 28, 1968 | Debtors caused stock to be issued in Mission's name. |
| July 18, 1968 | Mission sent defendant notice of election to subrogate. |
| July 22, 1968 | Debtors deposited stock certificates in escrow with Corporation Commissioner. |
| July 25, 1968 | Final decree closing debtors' estates filed. |
| Aug. 1, 1968 | Defendant notified Mission of his rejection of election to subrogate. |

Aug. 7, 1968   Plaintiff moved Superior Court for leave to supplement complaint to allege its offer to subrogate and defendant's rejection.

Aug. 19, 1968   Plaintiff's motion granted; supplement to complaint filed.

In evaluating these facts significant provisions of Chapter XI of the Bankruptcy Act (11 U.S.C. § 701 et seq.) must be considered. A plan of arrangement affects only unsecured creditors, and only those unsecured creditors whose claims have been allowed may participate in and vote at the meeting of creditors at which the plan is being considered. (11 U.S.C. § 762; *In re Grayson-Robinson Stores, Inc.* (S.D.N.Y. 1964) 227 F.Supp. 609, 613; *In re Strotz* (S.D.Cal. 1943) 50 F.Supp. 322, 325.) The confirmation of a plan of arrangement is binding "upon all creditors of the debtor, whether or not they are affected by the arrangement or have accepted it or have filed their claims, and whether or not their claims have been scheduled or allowed and are allowable." (11 U.S.C. § 767(1).) The confirmation of the plan discharges the debtor from his unsecured debts and liabilities. (11 U.S.C. § 771.) Since Mission's claim was not allowed until May 1, 1968, approximately eight and one-half months after the order confirming the plan, we can assume that prior to that date it had not participated in any of the proceedings in connection with the plan of arrangement, and that it had not given its consent thereto. Until May 1, 1968, it did not know whether it would be entitled to the stock to be distributed under the plan. It was during this period of uncertainty as to its status and rights that Mission caused the instant action to be filed against the guarantor.

These facts are readily distinguishable from those of *Durgin* where the creditor apparently participated in the plan of arrangement, thereafter received stock, gambled on possible appreciation in value of the stock and sought to exercise its option "for the first time *years after receipt of the stock*, . . . after a jury determination that its fair market value at the time of receipt equalled the value of the principal debt." (Italics in original.) (68 Cal.2d at p. 92.) Accordingly we hold that triable issues of fact are presented as to whether Mission "accepted" the securities before its offer to subrogate, and that the granting of the motion for summary judgment was erroneous. We express no opinion on the merits of the case.

In view of this conclusion we need not discuss other questions raised.

Judgment reversed.

Cobey, J., and Allport, J., concurred.

A petition for a rehearing was denied January 13, 1971, and respondent's petition for a hearing by the Supreme Court was denied February 17, 1971.