[Civ. No. 32321.   Second Dist., Div. Five.   Mar. 4, 1969.]

GLADYS M. ANDERSON et al., Plaintiffs and Appellants,
v. STATE FARM MUTUAL AUTOMOBILE INSUR-
ANCE COMPANY, Defendant and Respondent.

R. P. Reddingius and Edward C. Baretta for Plaintiffs and Appellants.

Spray, Gould & Bowers and Eugene R. Grace for Defendant and Respondent.

KAUS, P. J.—Plaintiffs appeal from a judgment declaring that the defendant insurer is not liable with respect to a certain accident.

On September 22, 1962, plaintiff Gladys M. Anderson[1] went to the Los Angeles County Fair in Pomona with her husband and relatives from Nebraska. They drove a Chevrolet loaned to plaintiff by her employer. At a ticket window on the fair grounds plaintiff met a Mr. Larson. Without telling anyone in her party she accepted Mr. Larson's invitation and left the fair grounds with him in his blue Falcon automobile. They stopped at two stores in Pasadena and Sierra Madre where plaintiff cashed over $100 worth of checks. She gave the proceeds to Larson. At 4 o'clock they arrived at the El Poche restaurant in San Gabriel. Three hours later plaintiff began to wish that the waiters would hurry up and serve dinner. She was getting anxious. In the meanwhile she had consumed part of a mixed drink. Larson then excused himself, apparently to go to the men's room. He never returned. Plaintiff, who had no money, had to sign for the bill.

At the trial plaintiff claimed that she had no recollection of events after signing for the bill and before regaining con-

---

[1] Gladys' husband, Lloyd M. Anderson, has joined her as a coplaintiff. Since he plays no part in the events which led to this litigation, we will not refer to him further.

sciousness at the San Gabriel Community Hospital. She had suffered a fractured skull and other injuries. It was stipulated that at 7:52 p.m. she had been involved in an accident on San Marino Avenue, a short distance north of Los Robles. At that time she was driving a 1957 Cadillac, the property of one George D. Yocum who had parked it near the El Poche and taken his keys with him. When he returned to his car he found it gone and immediately reported the loss to the San Gabriel Police Department. He had given no one permission to drive the car.

In a statement given to one of defendant's adjusters, plaintiff had said that after Larson's disappearance she got into a car which she thought was his and drove off, which was the last thing she purported to remember before her awakening at the hospital.

The accident resulted in civil judgments against plaintiff totalling about $13,000. Yocum, whose Cadillac was a total loss, was one of the judgment creditors.

At the time of the accident plaintiff was the owner of a 1955 Chevrolet stationwagon,[2] the operation of which was insured by a policy issued by the defendant.

The controversy before us centers on the question whether Mr. Yocum's Cadillac was a "non-owned" automobile as defined in defendant's policy.

In relevant part, the policy provision in question reads as follows:

"Such insurance as is afforded by this policy . . . with respect to the owned automobile applies to the use of a non-owned automobile by the named insured . . . and any other person or organization legally responsible for the use by the named insured . . . of an automobile not owned or hired by such other person or organization *provided such use is with the permission of the owner or person in lawful possession of such automobile.*" (Italics added.)

The issue is whether the italicized clause modifies the entire insuring agreement or merely the protection afforded to "any

---

[2]Just exactly how plaintiff was able to start the Cadillac was never established. In a memorandum opinion the trial court speculated as follows: ". . . Mrs. Anderson's keys to her General Motors station wagon by coincidence could have operated the General Motors Cadillac. Yocum may have left a second set of keys in the car. The Cadillac may have had an ignition which could be left open and operated without a key. There is even the somewhat unlikely possibility that she could have 'hot wired' the Cadillac, although there was no evidence that the wiring of the car in question had in fact been tampered with.''

other person or organization legally responsible for the use by the named insured."[3]

We approach the task of interpretation with the rules on how to construe insurance policies well in mind. (*Gray* v. *Zurich Ins. Co.*, 65 Cal.2d 263, 273 [54 Cal.Rptr. 105, 419 P.2d 168]; *Steven* v. *Fidelity & Cas. Co.*, 58 Cal.2d 862 [27 Cal.Rptr. 172, 377 P.2d 284]; *Continental Cas. Co.* v. *Zurich Ins. Co.*, 57 Cal.2d 27, 32 [17 Cal.Rptr. 12, 366 P.2d 455].) ■ All uncertainties are to be resolved against the insurer. ". . . ■ If semantically permissible, the contract will be given such construction as will fairly achieve its object of securing indemnity to the insured for the losses to which the insurance relates. . . ." (*Wildman* v. *Government Emp. Ins. Co.*, 48 Cal.2d 31, 35 [307 P.2d 359].) ■ At the same time we must not "indulge in a forced construction so as to fasten a liability on the insurance company which it has not assumed." (*Jarrett* v. *Allstate Ins. Co.*, 209 Cal.App.2d 804, 810 [26 Cal.Rptr. 231]; *Pacific Employers Ins. Co.* v. *Maryland Cas. Co.*, 65 Cal.2d 318, 323 [54 Cal.Rptr. 385, 419 P.2d 641].)

■ Semantically and grammatically the policy provision is not even ambiguous. A limiting clause is to be confined to the last antecedent, unless the context or evident meaning requires a different construction. (*Elbert, Ltd.* v. *Gross*, 41 Cal.2d 322, 326-327 [260 P.2d 35]; *Grant* v. *Hipsher*, 257 Cal.App.2d 375, 383 [64 Cal.Rptr. 892].) If there were a comma between the words "organization" and "provided" the result might be different, but there is none. The proviso therefore modifies only the coverage extended to entities other than the named insured.

■ We realize that the rule of the last antecedent is merely an aid to construction, applicable only where there exist uncertainties and ambiguities. (*Kelly* v. *State Personnel Board*, 31 Cal.App.2d 443, 448 [88 P.2d 264]; 17A C.J.S., Contracts, § 305; 82 C.J.S., Statutes, § 334.) This merely means, however, that if the clear intent of the parties is

[3]Semantically, the proviso has a third possible meaning which is no more favorable to defendant's position than the meaning which we think it has. The draftsman could have intended the proviso to modify the nature of the liability of the "other person or organization." In other words it could have been his intention to describe entities who are legally responsible for the insured's use of automobiles not owned by such entities, but driven with the permission of the real owner or legal possessor. Legally—as distinguished from semantically—this is pretty much of a nonexistent class.

opposed to the application of the rule, the rule must yield. No such situation is presented here.

It is suggested that it shocks the conscience that coverage should be extended to a thief.[4] There are two answers to this: first, plaintiff was not necessarily a thief in the criminal sense; second, in the past the insurance industry has extended such coverage from time to time. In Risjord and Austin, Automobile Liability Insurance Cases, Standard Provisions and Appendix, we find reprinted certain standard provisions that have been commonly in use in the industry. As far as the standard policies reproduced in that work are concerned, no limitation with respect to permission is found in the 1947 Basic Automobile Liability Policy (*ibid.*, p. 6), in the 1955 Basic Automobile Policy (*ibid.*, pp. 22-23), or in the 1956 Family Automobile Liability Policy (*ibid.*, p. 37). The 1958 Family Automobile Liability Policy does contain a proviso which purports to restrict the coverage to permissive driving. (*Ibid.*, p. 57.)[5] Similar provisos are found in the 1959 Package Automobile Policy (Mutual) (*ibid.*, p. 86) and the 1959 Special Automobile Policy (Stock) (*ibid.*, p. 120). Starting with the 1963 Special Package Automobile Policy the requirement of permission from the owner was softened by extending coverage if the named insured ''reasonably believed'' the use ''to be with the permission, of the owner . . .'' (*Ibid.*, p. 152.) This modification was also inserted in the 1963 Family Automobile Liability Policy. (*Ibid.*, p. 185.)

The worst that can be said about the interpretation of the policy which we feel compelled to adopt is that it is perhaps odd that the proviso with respect to permission applies to the additional insured who is legally responsible for the named insured, but not to the latter. We need not explore to what

---

[4] In *McMichael* v. *American Ins. Co.*, 351 F.2d 665, the court had no moral scruples about extending insurance to a user not proved to have permission of the owner, although it did express the opinion that but for certain peculiar circumstances, permission could probably have been proved. The *McMichael* case refers us to two decisions, *Sperling* v. *Great American Indem. Co.*, 7 N.Y.2d 442 [166 N.E.2d 482], and *Home Indem. Co.* v. *Ware*, 285 F.2d 852, where coverage was extended to youthful thieves. The question whether public policy forbids insuring the negligent operation of a stolen car was discussed in the *Sperling* case and answered in the negative.

[5] ''The following are insureds under Part I: . . . (b) With respect to a non-owned automobile, (1) the named insured, (2) any relative, but only with respect to a private passenger automobile or trailer, provided the actual use thereof is with the permission of the owner; . . .''

extent this difference of treatment is more illusory than real.[6] Indeed, defendant argues quite plausibly that if the proviso affects only the coverage extended to the additional insured, its effect is nil, since the insurer would still be responsible for the liability of the named insured. That is, of course, quite true, but we do not see how an insured layman can be deprived of coverage which a reasonable grammatical construction of the policy extends to him, simply because a professional inspection of the policy reveals that a proviso, which apparently does not affect him, is legally of little or no importance.

The judgment is reversed.

Aiso, J., and Reppy, J., concurred.

A petition for a rehearing was denied April 1, 1969, and the opinion was modified to read as printed above. Respondent's petition for a hearing by the Supreme Court was denied April 30, 1969. Mosk, J., was of the opinion that the petition should be granted.

---

[6]No coverage is afforded to ''other persons or organizations'' who own the nonowned automobile. In most situations, therefore, the additional insured will be an employer of the named insured who does not own the automobile. The injured party usually does not care whether the insurer pays because he insures the negligent driver or his employer. Payment on behalf of the driver exonerates the employer pro tanto. To the extent that the employer has no insurance when the named insured drives a stolen car in the course and scope of his employment, the named insured's duty to indemnify the employer should, as a practical matter, compel the insurer to assume the resonpsibility for the employer.