[No. B002528. Second Dist., Div. Five. July 24, 1984.]

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,
Plaintiff, Cross-defendant and Respondent, v.
RICHARD EASTMAN, Defendant, Cross-defendant and Appellant;
INTERINSURANCE EXCHANGE OF THE AUTOMOBILE CLUB OF
SOUTHERN CALIFORNIA,
Defendant, Cross-complainant and Respondent;
LYNN P. JENSEN et al., Defendants, Cross-defendants and Respondents.

564

COUNSEL

Shield & Smith, Gary R. Gibeaut and Kirk H. Nakamura for Defendant, Cross-defendant and Appellant.

Spray, Gould & Bowers, Richard C. Turner and Robert D. Brugge for Plaintiff, Cross-defendant and Respondent.

Chris S. Rellas for Defendant, Cross-complainant and Respondent.

Gilbert, Kelly, Crowley & Jennett, Patrick A. Mesisca, Jr., and Peter J. Godfrey for Defendants, Cross-defendants and Respondents.

## OPINION

**FEINERMAN, P. J.**—Defendant, Richard Eastman (Eastman), appeals from a judgment in favor of plaintiff, State Farm Mutual Automobile Insurance Company (State Farm) and cross-complainant, Interinsurance Exchange of the Automobile Club of Southern California (Interinsurance), based on an order granting State Farm's and Interinsurance's motions for summary judgment.

On May 25, 1980, Eastman was involved in a single vehicle accident while driving a dune buggy which belonged to his brother-in-law, Lynn P. Jensen (Jensen). Eastman and several passengers were injured in the accident. Eastman had an "assigned risk" policy of automobile insurance issued by State Farm and Jensen was insured under a policy of automobile insurance issued by Interinsurance.

State Farm filed a complaint seeking declaratory relief as to its duty under its insurance policy to either defend or indemnify Eastman. Interinsurance cross-complained, also seeking a declaration as to its duty to defend or indemnify Eastman.[1]

In ruling on State Farm's motion for summary judgment, the trial court determined, as a matter of law, that the State Farm policy did not cover Eastman with respect to nonowned vehicles unless he was driving with permission of the owner. The court also determined that there was no triable issue of fact and that the evidence established, as a matter of law, that Eastman was driving the dune buggy without Jensen's permission. Finally, the trial court concluded that State Farm had no obligation to defend East-

---

[1]Other defendants and other questions were involved in both State Farm's and Interinsurance's complaints for declaratory relief. However, Eastman is the only party who filed a notice of appeal. Hence, we confine our discussion of the case to those factors pertinent to Eastman's appeal.

man because Eastman "could not have reasonably expected a defense for conduct that was excluded from coverage."

In ruling on Interinsurance's motion for summary judgment, the trial court ruled that the Interinsurance policy extended coverage to Eastman only if he was driving the dune buggy with Jensen's permission or was a "relative" within the terms of the policy. The trial court held that the evidence established, as a matter of law, that Eastman was driving without the permission of Jensen and that Eastman was not a "relative" within the meaning of Interinsurance's policy.[2]

## I

### THE STATE FARM POLICY

Eastman contends that the trial court improperly construed the State Farm policy when it held that Eastman, the named insured, was not covered when driving a nonowned vehicle without the permission of the owner.

The rules with respect to the proper interpretation of insurance policies are well settled. (*Gray* v. *Zurich Insurance Co.* (1966) 65 Cal.2d 263, 269 [54 Cal.Rptr. 104, 419 P.2d 168]; *Continental Cas. Co.* v. *Phoenix Constr. Co.* (1956) 46 Cal.2d 423, 437-438 [296 P.2d 801, 57 A.L.R.2d 914].) ■ An insurance policy is a contract and must be construed in the same manner as other contracts. (*Walters* v. *Marler* (1978) 83 Cal.App.3d 1, 33 [147 Cal.Rptr. 655].) ■ Where, as here, no extrinsic evidence was introduced to aid in construction of the insurance policy, the interpretation presents a question of law; and, on review, the appellate court is free to make an independent determination concerning the policy's meaning. (*Argonaut Ins. Co.* v. *Transport Indem. Co.* (1972) 6 Cal.3d 496, 502 [99 Cal.Rptr. 617, 492 P.2d 673]; *California State Auto. Assn. Inter-Ins. Bureau* v. *Antonelli* (1979) 94 Cal.App.3d 113, 117 [156 Cal.Rptr. 369].)

■ ■ The scope of a vehicle liability policy is to be construed with regard to the intent and reasonable expectations of the insured (*Interinsurance Exchange* v. *Macias* (1981) 116 Cal.App.3d 935, 938 [172 Cal.Rptr. 385]); and any ambiguity or uncertainty in an insurance policy must be resolved against the insurer. (*Insurance Co. of North America* v. *Sam Harris Constr. Co.* (1978) 22 Cal.3d 409, 412-413 [149 Cal.Rptr. 292, 583 P.2d 1335].)

---

[2]Although Eastman was Jensen's brother-in-law, the Interinsurance policy defined "relative" as any person related to the insured by blood, marriage or adoption "who is a resident of the same household" in which the insured resides.

In the case at bench, State Farm's policy provides in part I, the section headed, "Liability," that State Farm agrees "[t]o pay on behalf of the insured *all sums* which the insured shall become legally obligated to pay as damages because of: [bodily injury or property damage] arising out of the *ownership, maintenance or use of* the owned automobile or *any non-owned* automobile, and the company [State Farm] shall defend any suit alleging such bodily injury or property damage and seeking damages which are payable under the terms of this policy, even if any of the allegations of the suit are groundless, false or fraudulent . . . ." (Italics added.) Next follows a provision respecting "Supplementary Payments." Thereafter follows a provision headed, "Persons Insured," which is divided into two parts—(a) lists persons insured "with respect to the owned automobile," (b) lists persons insured "with respect to a non-owned automobile." The exact wording of the provision is as follows: "Persons insured. The following are insureds under Part I:

"(a) with respect to the owned automobile,

"(1) the named insured and any resident of the same household,

"(2) any other person using such automobile with the permission of the named insured, provided his actual operation or (if he is not operating) his other actual use thereof is within the scope of such permission, and

"(3) any other person or organization but only with respect to his or its liability because of acts or omissions of an insured under (a) (1) or (2) above;

"(b) with respect to a non-owned automobile,

(1) the named insured,

(2) any relative, but only with respect to a private passenger automobile or trailer, provided his actual operation or (if he is not operating) the other actual use thereof is with the permission, or reasonably believed to be with the permission, of the owner and is within the scope of such permission, and

(3) any other person or organization not owning or hiring the automobile, but only with respect to his or its liability because of acts or omissions of an insured under (b) (1) or (2) above."

■ The trial court determined that the permission proviso following (b) (2), above, was applicable to (1) and (2). We disagree for several reasons.

To begin with, the provisions under consideration are clearly ambiguous. As set forth above, part I, the section headed liability, commences by stating quite broadly that State Farm agrees to pay damage arising out of the use of the owned automobile, "or any non-owned automobile" without indicating that coverage is available only if the insured is using the non-owned automobile with permission of its owner.[3] The permission proviso is not included in the definition of nonowned automobile and is not listed as one of the exclusions. ■ Where a policy provision is ambiguous, particularly where it purports to limit the insured's coverage but is not included in the section marked exclusions, "doubts as to meaning must be resolved against the insurer," (*Gray* v. *Zurich Insurance Co., supra,* 65 Cal.2d 263, 269) and "[i]f semantically permissible, the contract will be given such construction as will fairly achieve its object of securing indemnity to the insured for the losses to which the insurance relates. . . . [I]f the doubt relates to extent or fact of coverage, whether as to peril insured against [citations], the amount of liability [citations] or the person or persons protected [citations], the language will be understood in its most inclusive sense, for the benefit of the insured." (*Continental Cas. Co.* v. *Phoenix Constr. Co., supra,* 46 Cal.2d 423, 437-438; see numerous cases to the same effect in 13 Appleman, Insurance Law and Practice (1976) § 7401, p. 197 et seq.; 2 Couch, Insurance (2d ed 1984) § 15.74, p. 334 et seq.)

In *Anderson* v. *State Farm Mut. Auto Ins. Co.* (1969) 270 Cal.App.2d 346, 348 [75 Cal.Rptr. 739], the court considered whether a permission proviso was applicable to the named insured. In that case the provision was as follows: "'Such insurance as is afforded by this policy . . . with respect to the owned automobile applies to use of a non-owned automobile by the named insured . . . and any other person or organization legally responsible for the use by the named insured . . . of an automobile not owned or hired by such other person or organization provided such use is with the permission of the owner or person in lawful possession of such automobile.'" The appellate court determined that the named insured was covered under the

---

[3]The term "non-owned automobile" is defined as follows: "'Non-owned automobile' means an automobile or trailer not owned by or furnished for the regular use of either the named insured or any relative, other than a temporary substitute automobile." Whereas, the policy specifically defined a temporary substitute automobile as: "any automobile or trailer, not owned by the named insured, while temporarily used with the permission of the owner as a substitute for the owned automobile or trailer when withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction." The distinction between the two, in light of the permission proviso of (b)(2), is polysemous.

above provision in spite of the fact that she was injured while driving another person's car without permission. The court stated (270 Cal.App.2d at p. 349): "Semantically and gramatically the policy provision is not even ambiguous. A limiting clause is to be confined to the last antecedent, unless the context or evident meaning requires a different construction. [Citations.] If there were a comma between the words 'organization' and 'provided' the result might be different, but there is none. The proviso therefore modifies only the coverage extended to entities other than the named insured." 

Under the rule of construction ennunciated in *Anderson,* we find the permission proviso contained in the State Farm policy is applicable only to (b)(2), "any relative." While it is true that a comma follows "trailer" and precedes "provided," we do not think a different result follows. Here, paragraph (b) is divided into three subsections. If the permission proviso was intended to modify the named insured and any relative, there was no need to separate those designations into separate subsections.

Also supportive of our determination regarding the applicability of the permission proviso is *Government Employees Ins. Co. v. Kinyon* (1981) 119 Cal.App.3d 213 [173 Cal.Rptr. 805]. In that case, the named insured's son drove a nonowned car without the permission of the owner. Among other things, the court considered the insurance company's duty to defend and indemnify the named insured under a nonowned automobile clause very similar to the one we consider here. The clause provided coverage as follows: "(b) with respect to a non-owned automobile, [¶] (1) the named insured, [¶] (2) any relative, but only with respect to a private passenger automobile or trailer, provided his actual operation or (if he is not operating) the other actual use thereof is with the permission, or reasonably believed to be with the permission, of the owner and is within the scope of such permission, and [¶] (3) any other person or organization not owning or hiring the automobile, but only with respect to his or its liability because of acts or omissions of an insured under (b)(1) or (2) above."

In finding that the permission proviso in this clause was only applicable to "any relative," the *Kinyon* opinion noted the unqualified coverage promised to the named insured in the first part of the policy in language very similar to that in the policy presently before us. The court stated (119 Cal.App.3d 213, 225-226): "We find most significantly under part I of the policy relating to liability 'Coverage A—Bodily Injury Liability' and 'Coverage B—Property Damage Liability,' the insurer agrees '[t]o pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of [bodily injury and property damage] arising out of the ownership, maintenance or use of the owned automobile *or any nonowned automobile,* . . .' Such provision appears to be all inclusive and

designed to protect the named insured against all claims for damages arising out of the operation of any owned or nonowned automobile. Nothing relating to permission is stated.

"Furthermore, if coverage granted the named insured is to be restricted, we would expect to find the restriction in the exclusion clause. We find nothing in the exclusion clause of the present policy which contains any exclusion pertinent here. In fact, the narrow explicit exclusion (h), which reads 'to a non-owned automobile while used (1) in the automobile business by the insured or (2) in any business or occupation of the insured, other than the automobile business, except a private passenger automobile operated or occupied by the named insured or by his private chauffeur or domestic servant, or a trailer used therewith or with an owned automobile,' indicates an intention to provide liberal coverage for the named insured. (See *McMichael* v. *American Insurance Company*, (8th Cir. 1965) 351 F.2d 665; *Harleysville Mut. Cas. Co.* v. *Nationwide Mut. Ins. Co.* (1966) 248 S.C. 398 [150 S.E.2d 233]; *United Services Auto Ass'n.* v. *Crandall* (1979) 95 Nev. 334 [594 P.2d 704, 705, 706]; *Employers Commercial Union Ins. Co.* v. *Bertrand, supra,* 306 So.2d 426, 431 (government employees insurance policy).)

"We conclude when the insurer's policy is read as a whole it covers the named insured's liability arising from any nonbusiness use of any nonowned automobile.

"The words of the clause ((b)(2)) regarding permissive use apply only to 'any relative.' Such requirement does not limit the coverage expressly afforded the named insured."

The court in *Government Employees Ins. Co.* v. *Kinyon, supra,* at page 226 concluded, as we do here, that under the terms of the policy the insurance company was "obliged to defend the named insured . . . and to the extent of the policy limits pay any judgment entered against him."

State Farm relies on a Maryland case entitled *State Automobile Mutual Insurance Co.* v. *Williams* (1973) 268 Md. 535 [302 A.2d 627], which comes to the opposite conclusion with respect to a "non-owned automobile" provision very similar to the one considered here. We do not choose to follow that case. We find the Maryland court's emphasis upon the niceties of word placement to be unsatisfactory and prefer the approach of the California court in *Kinyon* which focuses upon the construction of the policy taken as a whole and the reasonable expectations of the parties.

## II

### INTERINSURANCE POLICY

Eastman does not challenge the trial court's interpretation of the Interinsurance policy, but he does contend that the trial court erred in determining that the evidence established as a matter of law that, at the time of the accident, Eastman was driving the dune buggy without Jensen's permission.

State Farm and Interinsurance both relied on various declarations, depositions, and answers to requests for admissions in support of their motions for summary judgment. The evidence shows that over the Memorial Day weekend, 1980, Jensen, his wife Sandra, their children, several friends and Eastman went to Lake Mead, Nevada, where they stayed in a trailer park adjacent to the lake. The Jensens brought several vehicles with them, including the dune buggy. They arrived at the trailer park on Thursday night. On Friday, Jensen gave everyone in the group certain safety instructions as to the operation of the dune buggy and told them all that no one was to drive the dune buggy without getting Jensen's permission. In his deposition, Eastman testified as follows with respect to Jensen's instructions: "Q. What did he tell you in regards to driving the vehicle [the dune buggy]? A. No driving without seat belts. No driving with—first of all, *no driving without his permission each and every time.* No driving without safety helmets, without safety belts. No reckless driving. No off-roading and abuse on the dune buggy. Um that's about it. Oh, and plus not driving while you were intoxicated, too, or at nighttime unless it was driven by him [Jensen]." (Italics added.)

Both Jensen and Eastman testified that during the Memorial Day weekend Eastman had driven the dune buggy with Jensen's express permission. Jensen testified that Eastman used the vehicle for a short time on Friday with his express permission and on Sunday prior to the accident he had driven to the store and back with Jensen's permission. Eastman testified that he had driven the dune buggy on Saturday morning for about 15 minutes with Jensen's express permission.

On Sunday the entire party spent the day water-skiing. Eastman returned to the trailer park about 4:30 p.m. Jensen testified that when he dropped Eastman off he told him, "I don't want you driving the dune buggy."

Eastman testified that after he returned from water-skiing he asked his sister, Jensen's wife Sandy, if he could use the dune buggy and when she

said, "no," he took it anyway. He testified as follows with respect to his reasoning: "I had asked my sister; and she said—she said no herself because it was up to Lynn [Jensen]. And then I didn't talk to Lynn because he was out on the lake, or over at the beach area. So, *I did ask permission and it was denied.* And I just felt that I had used it—you know—driven it before. And I did know how to handle the vehicle. *I just felt—you know—that I'd take a little drive and nobody would know.*" (Italics added.)

Sandy Jensen testified that between 4 and 5 p.m. on Sunday, the day of the accident, coming back in the boat from water-skiing, Eastman asked Jensen if he could "take the dune buggy out when he got back." Jensen refused permission. Sandy testified that Eastman had been drinking all day and, in her opinion, he was under the influence of alcohol.

When Sandy got back to the trailer, Eastman asked her if he could take the dune buggy and she "told him no, that Lynn had already told him he couldn't." She also testified: "He [Eastman] told me that he was going to take it whether I wanted him to or not, that he would accept full responsibility of anything that happened to him."

Eastman also testified as follows in his deposition: "Q. And you were aware that you were only to operate that dune buggy with his [Jensen's] specific permission, is that correct? A. Yes. *Each and every time.* Q. And did he give you specific permission to operate that dune buggy before you took possession of it that Sunday? A. No. Not on that Sunday; no."

In opposition to State Farm's and Interinsurance's motions for summary judgment, Eastman submitted, among other things, his own answers to certain selected interrogatories which were directly contrary in part, to testimony given by Eastman in his deposition. Thus, in his response to interrogatory 10(a) Eastman states: "Prior to May 25, 1980, defendant operated the dune buggy in question on one or more occasions without obtaining the express permission of Lynn Jensen." Eastman's response to interrogatories 22(a) and 25(a) are as follows: "I had been told that the keys to the dune buggy in question would be kept in the possession of Lynn Jensen or in the dune buggy under the carpet on the driver's side. . . . [¶] It is my position and my reasonable belief that on the afternoon or early evening of May 25, 1980 I had implied permission to operate the dune buggy in question. Sandy Jensen is my sister and Lynn Jensen is my brother-in-law. On one or more occasions before May 25, 1980 I had operated the dune buggy without, on each and every occasion, first having to obtain the express permission of Lynn Jensen."

It is Eastman's position on this appeal that the mere fact of his relationship to Jensen, along with the fact that he had used the dune buggy on a prior occasion without securing Jensen's express permission, and the fact that he had been told where the keys were kept, was sufficient to raise a triable issue of fact as to whether he was reasonable in believing he had Jensen's implied permission to use the dune buggy.

In Eastman's deposition testimony he admitted two facts which are directly contrary to the position he asserts here. (1) He admitted that he had used the dune buggy on only one prior occasion and it was with the express permission of Jensen. (2) He admitted that Jensen required that he get his permission each and every time he used the dune buggy and that Jensen did not give him permission to use the dune buggy prior to the accident. ■ The issue raised is whether a party can rely on contradictions in his own testimony to create a triable issue of fact for purposes of a summary judgment motion. We answer this question in the negative. In *Leasman* v. *Beech Aircraft Corp.*, (1975) 48 Cal.App.3d 376 [121 Cal.Rptr. 768], the plaintiff in her deposition and answers to interrogatories admitted that she had sustained no physical injury as a result of a claimed accident. However, in her declaration in opposition to defendant's motion for summary judgment, she listed shock, headaches, back pain, etc. The appellate court upheld the trial court's summary judgment in favor of defendant stating (48 Cal.App.3d at p. 382): "Under the rule that the affidavits of the party opposing a motion for summary judgment are liberally construed (*Eagle Oil & Ref. Co.* v. *Prentice* [1942] 19 Cal.2d 553, 556 [122 P.2d 264]; *Zellner* v. *Lasky* [1970] 13 Cal.App.3d 787, 789 [91 Cal.Rptr. 810]), it appears that plaintiff has presented sufficient competent evidence to present a triable issue of fact with respect to whether she sustained a physical injury in the subject incident. However, in view of plaintiff's admission in her deposition and answers to interrogatories that she had suffered no physical injury as a result of the incident, the rule of liberal construction loses its efficacy and the granting or denial of the motion for summary judgment depends upon the issues of credibility. Accordingly, when a defendant can establish his defense with the plaintiff's admissions sufficient to pass the strict construction test imposed on the moving party (*Eagle Oil & Ref. Co.* v. *Prentice, supra; Zellner* v. *Lasky, supra*), the credibility of the admissions are valued so highly that the controverting affidavits may be disregarded as irrelevant, inadmissible or evasive. (See Bauman, *California Summary Judgment: A Search For a Standard* (1963) 10 U.C.L.A. L.Rev. 347, 353-354; and see *D'Amico* v. *Board of Medical Examiners* [1974] 11 Cal.3d 1, 21-22 [112 Cal.Rptr. 786, 520 P.2d 10]; *King* v. *Andersen* [1966] 242 Cal.App.2d 606, 610 [51 Cal.Rptr. 561]; *Newport* v. *City of Los Angeles* [1960] 184 Cal.App.2d 229, 236-237 [7 Cal.Rptr. 497].)"

⬛ In this case, Eastman admitted that Jensen required his express consent "each and every time" a person wanted to use the dune buggy. He also admitted that he had only used the dune buggy on a prior occasion with the express consent of Jensen. Under the circumstances, Eastman's claim of implied consent must rest on his relationship with Jensen and the fact that Eastman 'knew where Jensen kept the keys to the dune buggy. We hold that the trial court properly ruled that these facts, standing alone, were insufficient as a matter of law to raise a triable issue as to the question whether Eastman had implied permission to use the dune buggy.

The judgment is reversed as to defendant State Farm. In all other respects, the judgment is affirmed. Eastman to recover costs against State Farm. Interinsurance to recover costs against Eastman.

Stephens, J., and Hastings, J., concurred.

A petition for a rehearing was denied August 15, 1984, and the judgment was modified to read as printed above on August 22, 1984.