Filed 5/27/21  Whitmer v. Farmers Insurance Exchange CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| JASON WHITMER, | B305827 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC684610) |
| v. | |
| FARMERS INSURANCE EXCHANGE, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Teresa A. Beaudet, Judge.  Affirmed.

Thompson Law Offices and Robert W. Thompson; Holman Schiavone and Aiman A. Dvorak for Plaintiff and Appellant.

Tharpe & Howell, Christopher S. Maile, and Eric B. Kunkel for Defendant and Respondent.

\* \* \* \* \* \*

An employee of an insurance company sued his employer for discrimination and retaliation. When the employer moved for summary judgment, the employee dropped his discrimination claims but maintained that triable issues of fact on his retaliation-based claims warranted the denial of summary judgment. The trial court concluded there were no triable issues, and dismissed the employee's retaliation-based claims. This was correct, so we affirm.

## FACTS AND PROCEDURAL BACKGROUND

### I.     Facts

Jason Whitmer (plaintiff) was born in March 1968. He started working for Farmers Insurance Exchange (Farmers) in 1991.[1] Plaintiff worked in its Pocatello, Idaho office.

#### A.     *Plaintiff's professional relationship with Kamala Wedding (Wedding)*

In 2003 or 2004, plaintiff hired Wedding to work with him at Farmers. In the ensuing years, Wedding was promoted to be plaintiff's peer and, by 2014, his supervisor. By 2013, however, plaintiff believed that he and Wedding had "different personalities and management styles."

#### B.     *Plaintiff's layoff amid corporate restructuring*

In 2014, plaintiff was employed as one of two division managers within Farmers's Special Investigations Unit (the

---

1     By stipulation of the parties, the Farmers entity responsible for any misconduct is Farmers Insurance Exchange. Thus, although plaintiff initially sued Farmers Insurance Group, Inc. as well, he eventually dismissed that entity.

Unit). At that time, the Unit had a director, two division managers and four zone managers. Wedding became the Unit's director in 2015.

In late 2015 and early 2016, Farmers restructured the Unit. As part of this restructuring, Farmers eliminated the two division manager positions and added a fifth zone manager position. Because this left two, higher-level division managers without jobs, Farmers decided to re-interview all interested employees for *all five* zone manager positions.

Wedding and others interviewed plaintiff for one of the zone manager positions in early February 2016, but did not select him for the position because Farmers "preferred" the position be based out of its Southern California office and plaintiff was unwilling to relocate from Pocatello.

In a March 8, 2016 letter, Farmers informed plaintiff he had 60 days to line up a different job at Farmers before being terminated.

**C.      *Plaintiff's hire for a different position at Farmers***

In late March 2016, plaintiff applied for a position as a direct repair facility consultant that would allow him to remain in Pocatello. In late April, he was offered the position.

On Farmers's pay scale, the consultant position was four salary grades below the division manager position. This meant a salary cut from $120,659.14 to $96,900. Plaintiff later explained that he was aware that the new job "require[d him] to take a" "four salary grade demotion" and a nearly $30,000 "downgrade in pay," but that he "took [it] in an effort to keep [his] employment with Farmers."

3

To soften the impact of this reduction in salary, plaintiff in late April or early May of 2016 approached Angela Smith (Smith), one of Farmers's Human Resources Consultants, to ask if Farmers would be willing to implement a phased reduction in his salary rather than dropping it all at once. Farmers granted plaintiff's request, allowing him to keep his $120,659.14 salary for one year; at that one-year mark (in May 2017), Farmers would drop his salary by $10,000; six months later (in November 2017), Farmers would drop his salary by another $10,000; and six months after that (in May 2018), Farmers would drop his salary to the highest authorized salary in the salary grade for the consultant position. This arrangement was "memorialized" in a "Change in Employment Conditions" form.

Plaintiff formally accepted the consultant position on May 4, 2016. Farmers thereafter reduced plaintiff's salary according to schedule.

### D. *Plaintiff's internal complaint*

On December 28, 2016, plaintiff lodged an internal complaint with Farmers through a third-party administrator retained by Farmers to receive such complaints.[2]

In his internal complaint, plaintiff asserted that he was "treated unfairly and retaliated against" "in regard to the reorganization of [the Unit]" because Wedding "created location requirements for [the zone manager] position she knew [plaintiff] could not meet" in order to preclude him "from obtaining th[at]

---

[2] Although the operative complaint alleges that plaintiff initially lodged his internal complaint between "approximately Christmas 2015 and New Year's 2016," those allegations are inconsistent with the undisputed *evidence* and, as the trial court noted, would also render plaintiff's claims untimely.

position." Plaintiff set forth eight incidents that, in his view, established Wedding's animosity toward him—namely, that (1) Wedding, in December 2013, met with plaintiff to tell him that his work group was "negatively affect[ing] her [work] group," (2) Wedding became "upset" in late 2013 and early 2014 when plaintiff gave her a "candid peer evaluation" of her work, (3) Wedding again became "upset" in December 2015 when plaintiff, at the urging of Wedding's supervisor, told Wedding that she was "overreacting to every issue brought to her attention," (4) Wedding in December 2015 "threat[ened]" plaintiff that he would be rated poorly if he did not agree with Wedding's recommendation to give one of plaintiff's subordinates a lower evaluation rating, (5) Wedding in February 2016 gave plaintiff a performance rating of "building" (rather than "successful") on his prior year's work, (6) during the call on March 8, 2016, when Wedding informed plaintiff he would not be hired for a zone manager position, Wedding told plaintiff it would be "up to the Zone Managers" whether plaintiff could get another position at Farmers, (7) Wedding immediately pulled plaintiff off of his duties as division manager once he was not hired for the zone manager position, and (8) plaintiff got a call from another employee in June 2016 warning him not to "speak negative[ly] about [Wedding]."

At no point in the internal complaint did plaintiff express or imply that he was discriminated against based on his age.

### E. *Plaintiff's voluntary resignation*
In October 2018, plaintiff voluntarily left Farmers.

5

## II. Procedural Background

### A. *Pleadings*

On November 22, 2017, plaintiff sued Farmers. After the trial court sustained a demurrer to plaintiff's original complaint with leave to amend, plaintiff filed the operative, first amended complaint alleging claims for (1) discrimination in violation of the Fair Employment and Housing Act (FEHA) (Gov. Code, § 12940 et seq.), (2) retaliation in violation of FEHA, (3) failure to prevent violations of FEHA, and (4) wrongful termination in violation of public policy.[3]

With regard to his retaliation claim, plaintiff alleges that Farmers retaliated against him for filing his internal complaint by "demot[ing him] a second time on May 1, 2017" and "demot[ing] him again" "in December 2017" by reducing his pay.

### B. *Motion for summary judgment or summary adjudication*

In July 2019, Farmers filed a motion for summary judgment or summary adjudication.

In response, plaintiff (1) dismissed his claims for discrimination and wrongful termination in violation of public policy, and (2) opposed summary judgment on his claims for retaliation and failure to prevent retaliation. Plaintiff testified in his deposition in this case that (1) he never had any discussions about how the consultant position would affect his salary, (2) his salary in the consultant position was to stay "the same" despite

---

[3] While plaintiff's operative complaint alleges discrimination on the basis of race, age, and gender and retaliation for complaining about age- and gender-based discrimination, the sole basis plaintiff pursues on appeal is retaliation for his complaint regarding age-based discrimination.

being four salary grades lower, and (3) the first time he learned there would be any change to his salary was in May 2017 (and thus after he lodged his internal complaint raising issues of age discrimination), when his salary dropped by $10,000, and in November 2017, when it dropped by another $10,000.

After Farmers filed a reply and the trial court held a hearing, the court granted summary judgment for Farmers on plaintiff's claim of retaliation and his derivative claim of failing to prevent retaliation. Specifically, the court ruled that (1) plaintiff did not engage in any protected activity that could give rise to a retaliation claim because his internal complaint did not allege—and did not put Farmers on notice of any possible—age discrimination, and (2) there was no causal link between plaintiff's complaint and any adverse employment action because Farmers implemented the phased drop in his salary in May 2016, which was more than seven months before plaintiff filed his internal complaint in December 2016. The court also overruled plaintiff's evidentiary objections to the Change in Employment Conditions form and the sixth paragraph of Smith's declaration recounting that her supervisor had approved the phased salary reduction plan and that the plan had been memorialized in the Change in Employment Conditions form.

### C. *Entry of judgment and appeal*

Following the entry of judgment, plaintiff filed this timely appeal.

## DISCUSSION

Plaintiff argues that the trial court erred in granting summary judgment on his claims of retaliation and failure to prevent retaliation. Because a claim for failure to prevent retaliation under FEHA is necessarily premised on a valid claim

7

for retaliation (*Thompson v. City of Monrovia* (2010) 186 Cal.App.4th 860, 880), the viability of plaintiff's lawsuit hinges on whether the trial court erred in granting summary judgment on plaintiff's retaliation claim.

A court errs in granting summary judgment if there are "genuine" or "triable" issues of fact to be resolved at trial—that is, if "'the evidence would allow a reasonable trier of fact to find . . . in favor of the party opposing the [summary judgment] motion.'" (*Serri v. Santa Clara University* (2014) 226 Cal.App.4th 830, 860 (*Serri*), quoting *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 845; see *Davis v. Kiewit Pacific Co.* (2013) 220 Cal.App.4th 358, 365.) We review a trial court's summary judgment ruling independently, without regard to its conclusions or its reasoning. (*Minish v. Hanuman Fellowship* (2013) 214 Cal.App.4th 437, 455.) In so doing, we may not weigh conflicting evidence or assess the credibility of witnesses (*Sandell v. Taylor-Listug, Inc.* (2010) 188 Cal.App.4th 297, 319), and must resolve any doubts against summary judgment and in favor of trial (*Salas v. Sierra Chemical Co.* (2014) 59 Cal.4th 407, 415).

Among other things, FEHA makes it unlawful "[f]or any employer . . . to discharge, expel, or otherwise discriminate against any person because the person has opposed any practices forbidden under" FEHA. (Gov. Code, § 12940, subd. (h).) In evaluating such claims, California uses a burden-shifting mechanism. The employee must first establish a prima facie case of retaliation by producing evidence to show that "(1) he . . . engaged in a 'protected activity,' (2) the employer subjected the employee to an adverse employment action, and (3) a causal link existed between the protected activity and the employer's action." (*Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1042

8

(*Yanowitz*).)  If he meets this burden, then it is rebuttably presumed that the employer engaged in retaliation, and the burden shifts to the employer to set forth "a legitimate, nonretaliatory reason for the adverse employment action."  (*Ibid.*)  The burden then "shifts back to the employee to prove intentional retaliation."  (*Ibid.*)

The burden-shifting mechanism works differently when evaluating a summary judgment motion.  (*Serri, supra*, 226 Cal.App.4th at p. 861.)  Where, as here, the employer is the movant for summary judgment, the employer bears the initial burden to disprove one or more elements of the employee's prima facie case or to adduce evidence supporting a legitimate, nonretaliatory reason for the adverse employment action.  (*Ibid.*; *Cheal v. El Camino Hospital* (2014) 223 Cal.App.4th 736, 741.)  If it does so, then the burden shifts to the employee to produce "substantial evidence" that (1) "'the employer's stated reasons were untrue or pretextual,'" or (2) "'the employer acted with a [retaliatory] animus.'"  (*Serri*, at p. 861, quoting *Cucuzza v. City of Santa Clara* (2002) 104 Cal.App.4th 1031, 1038; see *Choochagi v. Barracuda Networks, Inc.* (2020) 60 Cal.App.5th 444, 457.)

We agree with the trial court's conclusion that plaintiff has failed to establish a triable issue of fact on two of the three elements of his retaliation claim.

## I.    Protected Activity

An employee engages in activity protected by FEHA if he "opposes activity [he] reasonably believes constitutes unlawful discrimination," but not if he makes "complaints about personal grievances."  (*Yanowitz, supra*, 36 Cal.4th at p. 1047; Gov. Code, § 12940, subd. (a) [prohibiting discrimination on the basis of age, among other characteristics].)

Here, it is undisputed that plaintiff's internal complaint made no mention of age discrimination whatsoever. Instead, the complaint alleged that plaintiff was "treated unfair[ly]" and "retaliated against" because Wedding boxed him out of the job he wanted and, in support of that allegation, the complaint recited a litany of reasons why Wedding had reason to dislike him and a litany of additional ways in which she had manifested that dislike. Because the sole evidence of protected activity underlying plaintiff's retaliation claim is the internal complaint, Farmers carried its initial burden of establishing the absence of the protected activity element of plaintiff's retaliation claim.

Plaintiff offers four reasons why, in his view, Farmers failed to carry its burden because his internal complaint *does* allege age discrimination or, alternatively, he carried his burden of producing evidence substantial enough to raise a triable issue of fact.

First, plaintiff asserts that an employee is "not required to use legal terms or buzzwords when opposing discrimination" (*Yanowitz*, *supra*, 36 Cal.4th at p. 1047), so his failure to expressly refer to age discrimination is of no moment. But plaintiff's internal complaint is not deficient for failing to describe age discrimination using the right words; rather, it is deficient for failing to describe age discrimination *at all*.

Second, plaintiff contends that one of Farmers's corporate investigators testified in his deposition that plaintiff's internal complaint "involved age discrimination." The investigator so testified only after he was shown what the attorney examining him represented to be part of plaintiff's internal complaint and that contained the words, "claims of retaliation and age discrimination." But no part of plaintiff's internal complaint in

10

the record contained the phrase read to the investigator by the examining attorney.  The fact that the examining attorney induced the investigator to parrot back a phrase that the attorney misrepresented was in a document—when it is undisputed that the phrase was *not* in that document—does not create a triable issue of fact.  (See *Western Digital Corp. v. Superior Court* (1998) 60 Cal.App.4th 1471, 1487 (*Western Digital*) ["'[A] trier of fact may not indulge in inferences rebutted by clear, positive and uncontradicted evidence.'  [Citation.]"].)  If it did, we would be condoning—and hence encouraging—trickery and deceit.

Third, plaintiff posits that the manner in which Farmers processed plaintiff's internal complaint creates substantial evidence that Farmers understood the complaint to allege age discrimination.  Specifically, plaintiff notes that Farmers (1) labeled it as a "Level 2" investigation, (2) ordered it to be investigated alongside two other internal complaints alleging age discrimination, and (3) routed the investigation through its Corporate Investigative Function Steering Committee.  But none of these observations raises a triable issue of fact.  A "Level 2" investigation simply refers to a possible "breach of company rules" that are "routine" (as opposed to the more serious "Level 1" investigation that "involves a very high degree of legal reputation or financial risk"); the "Level" classification says nothing about the *nature* of claim.  The pairing of plaintiff's internal complaint with other complaints is a function of the fact that complaints are to be jointly investigated because they involve common personnel, witnesses, or a possible trend; here, all three internal complaints were filed by employees working in the Unit and included accusations at Wedding.  Routing the investigation through the

11

Steering Committee means that the complaint potentially implicates "company policy" and "*may* involve a potential violation of law"; again, it says nothing about the *nature* of the policy or law violated.

Lastly, plaintiff argues that one of Farmers's lawyers told him, in the summer of 2017, that his internal complaint had "some merit." But this evaluation spoke to the merits of what plaintiff alleged in that complaint—and that complaint did not allege any age discrimination.

## II.    Causal Link

As noted above, a prima facie case for retaliation under FEHA requires proof of a "causal link" between the protected activity and the adverse employment action suffered by the plaintiff. (*Yanowitz*, *supra*, 36 Cal.4th at p. 1042.) Because a reduction in an employee's salary qualifies as an adverse employment action (e.g., *Pinero v. Specialty Restaurants Corp.* (2005) 130 Cal.App.4th 635, 640), and because it undisputed that plaintiff's pay dropped in May and November 2017, whether Farmers has established the absence of the causal link element depends entirely on whether there is any evidence of a link between that drop in pay and plaintiff's act of filing his internal complaint.

There is no evidence of such a link, and we reach this conclusion for two reasons. First, the undisputed facts show that Farmers adopted its phased salary reduction plan for plaintiff in May 2016, which was nearly eight months *before* plaintiff filed his internal complaint; as a result, the pay cut plaintiff cites as the sole adverse employment action in this case could not have been in retaliation for filing the internal complaint. Second, even if we were to accept plaintiff's argument that Farmers decided to

12

cut plaintiff's pay for the first time *after* he filed his internal complaint (and, by implication, that Farmers subsequently fabricated and backdated the seemingly contemporaneous Change in Employment Conditions form), plaintiff has failed to adduce any evidence whatsoever that the persons at Farmers responsible for the 2017 pay cuts knew about his internal complaint. (*Arnold v. Dignity Health* (2020) 53 Cal.App.5th 412, 429 [summary judgment appropriate where "there is no evidence that anyone involved in the decision to terminate plaintiff's employment knew about the complaint or that it factored into their determination"].) Given that Farmers employs thousands of people, plaintiff essentially asks us to infer that the employee(s) who learned of his internal complaint somehow told the unnamed employee(s) who controlled his pay levels in 2017 about that complaint, but this inference is based on nothing but speculation and hence cannot constitute substantial evidence. (*Batarse v. Service Employees Internat. Union, Local 1000* (2012) 209 Cal.App.4th 820, 834; *Diego v. City of Los Angeles* (2017) 15 Cal.App.5th 338, 349 ["An inference may not be based on speculation or surmise"].*)*

Plaintiff marshals two categories of arguments in response.

## A.     *Inadmissibility of change in employment form*

Plaintiff asserts that Farmers cannot establish that its phased salary reduction plan for him was in place in May 2016 because (1) the Change in Employment Conditions form documenting that plan is not admissible, and (2) the form is the sole evidence of Farmers's plan.

Neither of these premises is valid.

Even if we opt to sidestep the split of authority regarding the standard of review for evidentiary questions in summary

judgment motions by engaging in de novo review (*Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 535), the first premise is invalid because we independently conclude that the Change in Employment Conditions form is admissible as a business record under Evidence Code section 1271, which means it satisfies both the hearsay rule *and* is properly authenticated.  (*Remington Invs. v. Hamedani* (1997) 55 Cal.App.4th 1033, 1043 [laying foundation under Evidence Code section 1271 satisfies hearsay rule and authentication requirements]; *People v. Dean* (2009) 174 Cal.App.4th 186, 197, fn. 5.)  Evidence Code section 1271 provides that "a writing made as a record of an . . . event" is admissible "to prove the . . . event" occurred if (1) "[t]he writing was made in the regular course of a business," (2) "[t]he writing was made at or near the time of the . . .  event," (3) "[t]he custodian or other qualified witness testifies to its identity and the mode of its preparation," and (4) "[t]he sources of information and method and time of preparation were such as to indicate its trustworthiness."  (Evid. Code, § 1271; *Garibay v. Hemmat* (2008) 161 Cal.App.4th 735, 742.)  These requirements are met here:  (1) the Change in Employment Conditions form is on a standard Farmers form, which indicates that it is made in the regular course of Farmers's business; (2) the form was created on May 2, 2016, which was within days or weeks of plaintiff approaching Human Resources Consultant Smith to request the phased salary reduction plan; (3) Smith and plaintiff's supervisor in the consultant position both identified the form, and Smith explained that it was prepared to "memoralize[]" the phased salary reduction plan approved by Farmers; and (4) the form and Smith's testimony about the form, as well as Farmers's subsequent adherence to the schedule for the drops in salary,

14

indicate the form's trustworthiness.  (Accord, *Rivcom Corp. v. Agric. Labor Relations Bd.* (1983) 34 Cal.3d 743, 774, fn. 28 ["up-to-date employee records" and employer's "reliance on them amply establish[] their trustworthiness"].)

Plaintiff resists our analysis of the business records exception with three arguments.  To begin, he asserts that the Change in Employment Conditions form is not trustworthy because it is not completely filled out, bears no signatures, and has the "waiting for approval" box checked without any explanation.  "However, 'that a business record contains some omissions does not necessarily render unreliable the information the record includes.'" (*Jazayeri v. Mao* (2009) 174 Cal.App.4th 301, 323 (*Jazayeri*), quoting *People v. Hovarter* (2008) 44 Cal.4th 983, 1011.)  Relatedly, he asserts that the form is inconsistent with the letter he received on May 4, 2016 stating that his "annual base salary" was $120,659.14.  But there is no inconsistency because the phased salary reduction plan contemplated that his starting salary would initially stay the same as for the division manager position (that is, $120,659.14), and that the first salary drop would take effect a year later.  Next, plaintiff argues that Smith lacked sufficient personal knowledge to authenticate the form because she said that the phased salary reduction plan "was memorialized" (in the passive voice) and did not specify *who* memorialized it.  But Smith attested to her "personal knowledge" of its memorialization, and the person authenticating a business record need not be its author (*Jazayeri*, at p. 324).  Lastly, plaintiff points out that Smith was not the form's custodian.  But the rule only requires authentication by a "qualified witness"; the custodian is not necessary as long as the authenticating witness has the requisite

knowledge.  (*Ibid.*; *People v. Matthews* (1991) 229 Cal.App.3d 930, 940.)  Smith did.

The second premise of plaintiff's argument—namely, that the form was the sole evidence of Farmers's phased salary reduction plan—is also invalid because both Smith and plaintiff's new supervisor, Gregory Koch, also declared that Smith had obtained authority to implement the phased salary reduction plan.  Because plaintiff did not object to this evidence, it is properly before us and provides independent evidence that Farmers had committed to the phased salary reduction plan long before plaintiff filed his internal complaint.[4]  (Code Civ. Proc., § 437c, subds. (b)(5), (c), (d); see *Serri, supra*, 226 Cal.App.4th at p. 851, fn. 11.)

### B.      *Plaintiff's inconsistent deposition testimony*

Plaintiff contends that the timing of Farmers's phased salary reduction plan is still in dispute because, in his deposition in this case, he testified that his salary at Farmers was supposed to stay "the same" when he moved from the division manager position to the consultant position, such that the salary reductions he suffered in May and November 2017, respectively, must have been in retaliation for his December 2016 internal complaint.  This deposition testimony flatly contradicts what plaintiff previously stated under oath in a deposition and a declaration in other litigation against Farmers, where he testified that his "new job" "require[d him] to take" a "four salary grade demotion" and a nearly "$30,000" "downgrade in pay" and that he was "forced to" do so "in an effort to keep [his] employment with

---

4       For these reasons, we have no occasion to decide whether Smith's supervisor's authorization of the phased salary reduction plan fits within the state of mind exception to the hearsay rule.

16

Farmers." Where, as here, a plaintiff has already made a "clear and unequivocal admission" in prior declarations and depositions, his subsequent deposition testimony contradicting those prior admissions is to be disregarded and is "'no[t] substantial evidence of the existence of a triable issue of fact.' [Citation.]" (*D'Amico v. Board of Medical Examiners* (1974) 11 Cal.3d 1, 21; *Shin v. Ahn* (2007) 42 Cal.4th 482, 500, fn. 12; *State Farm Mut. Auto. Ins. Co. v. Eastman* (1984) 158 Cal.App.3d 562, 573; cf. *Scalf v. D.B. Log Homes, Inc.* (2005) 128 Cal.App.4th 1510, 1524-1525 [disregard of plaintiff's later statements does not "countenance ignoring other credible evidence that contradicts or explains that party's answers or otherwise demonstrates there are genuine issues of factual dispute"].)

Plaintiff responds that his prior sworn statements do not clearly and unequivocally conflict with his most recent deposition testimony because his prior statements merely reflected his state of knowledge *when he made those statements in 2018*—not what he knew at the time he took the new position in May 2016. This construction of plaintiff's prior sworn statements is not supported by the statements themselves. Plaintiff stated he was "required" and "forced" to take the "demotion" and "downgrade in pay" "to *keep* [his] employment." Because the only time plaintiff was in jeopardy of *losing* his job was during the 60-day window between March and May 2016, his efforts to *keep* that job necessarily occurred during that window. Although, as plaintiff points out, we are required to indulge all reasonable inferences against the grant of summary judgment (e.g., *Binder v. Aetna Life Ins. Co.* (1999) 75 Cal.App.4th 832, 854), this does not permit us to give a tortured and unreasonable reading to plaintiff's words to save plaintiff from his own prior admissions. (Accord, *Western Digital*,

17

*supra*, 60 Cal.App.4th at p. 1487 ["'[A] trier of fact may not indulge in inferences rebutted by clear, positive and uncontradicted evidence.' [Citation.]"].)

**DISPOSITION**

The judgment is affirmed.  Farmers is entitled to its costs on appeal.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.
HOFFSTADT


We concur:


_____, P. J.
LUI


_____, J.
CHAVEZ